UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLIED TRUST INSURANCE CO.                CIVIL ACTION

VERSUS                                    NO: 22-2085

RENE JUNCA                                SECTION: "H"

ORDER AND REASONS

Before the Court is Plaintiff Allied Trust Insurance Co.'s Motion for
Summary Judgment (Doc. 18). For the following reasons, the Motion is
**GRANTED IN PART**.

BACKGROUND

This matter arises out of an insurance dispute between Rene Junca and
his homeowner's insurer, Allied Trust Insurance Co. ("Allied"), following
damage to his home caused by Hurricane Ida on August 29, 2021. Junca
reported the damage to Allied on September 7, and an adjuster visited his
property on September 12. The adjuster noted damage to a solar panel and
limited other exterior damages, such as a damaged awning, a loose lantern, a
loose patio column, and a detached vent, and estimated the repairs at
$2,453.89 replacement cost value. The adjuster noted no roof damage. Because

1

the estimate was less than the deductible under the policy, Allied refused to pay any amount to Junca.

In response, Junca retained counsel and sent an estimate and demand totaling $101,380.37 to Allied on March 14, 2022. This estimate included a full roof replacement, replacement of all 56 solar panels on the home, and several interior repairs. On April 8, 2022, Allied advised Junca that it disagreed with the estimate and invoked the appraisal process provided for in the policy. When Junca failed to choose his own appraiser, Allied filed this declaratory judgment action on July 7, 2022. Junca filed counterclaims for breach of contract and bad faith damages pursuant to Louisiana Revised Statutes §§ 22:1892 and 22:1973.

Thereafter, Junca identified his appraiser, and the parties engaged in the appraisal process. The parties' appraisers agreed to the amount of the loss and signed an appraisal award setting the loss at $49,814.35 replacement cost value. Allied issued payment to Junca on August 29, 2022 in the amount of $40,907.39—the full amount of the award, less the applicable deductible and depreciation. Allied's claim for declaratory judgment against Junca was dismissed.[1]

Allied now moves for summary judgment on Junca's claims against it. It argues that an insurer cannot be penalized for disputing the amount of a loss

---

[1] Doc. 14.

and complying with appraisal to resolve that dispute. Junca opposes, arguing that Allied acted in bad faith even before invoking the appraisal process.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[2] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[4] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[5] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

3

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

Allied moves for summary judgment on Junca's claims for additional payments under the policy and statutory penalties, costs, and attorney's fees.

### I.   Breach of Contract

First, Allied argues that Junca is not entitled to additional payments under the policy in light of the appraisal award. Indeed, it is undisputed that Allied has tendered to Junca the amount of the covered loss owed under the policy as established by the binding appraisal award. Junca has not presented argument that it is owed any additional amount under the policy. Accordingly, Allied is entitled to summary judgment on Plaintiff's breach of contract claim.

### II.   Bad Faith Claims

Next, Allied seeks dismissal of Junca's claims for bad faith damages. "Louisiana law authorizes the recovery of bad faith penalties from insurers

---

[7] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

who fail to pay legitimate claims under two nearly identical [statutes]."[10] The two statutes prohibit "the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause."[11] The only difference between the two statutes is the time period in which payment is required, with one requiring payment within 30 days and the other within 60 days.[12]

"To recover under either statute, the plaintiff must demonstrate that the insurer (1) received a satisfactory proof of loss; (2) that the insurer failed to pay within the designated time period, and (3) that the failure to pay was arbitrary, capricious or without probable cause."[13] The bad faith statutes do not define "satisfactory proof of loss." The Louisiana Supreme Court has held that a "satisfactory proof of loss" is "only that which is sufficient to fully apprise the insurer of the insured's claims."[14] Louisiana courts have "adopted liberal rules concerning the lack of formality relative to proof of loss."[15] "So long as the insurer obtains sufficient information to act on the claim, the manner in which it obtains the information is immaterial."[16] "Whether and when the insurer

---

[10] Island Concepts, LLC v. Certain Underwriters at Lloyd's, London, No. CIV.A. 13-6725, 2014 WL 5524379, at *12 (E.D. La. Oct. 31, 2014) (citing LA. REV. STAT. §§ 22:1892, 22:1973).

[11] Korbel v. Lexington Ins. Co., 308 F. App'x 800, 803 (5th Cir. 2009) (quoting Reed v. State Farm Mut. Auto. Ins. Co., 857 So. 2d 1012, 1020 (La. 2003)).

[12] Compare LA. REV. STAT. § 22:1892 (requiring payment within 30 days of satisfactory proof of loss) with LA. REV. STAT. § 22:1973 (requiring payment within 60 days of satisfactory proof of loss).

[13] Island Concepts, 2014 WL 5524379 at *12 (citing Boudreaux v. State Farm Mutual Automobile Ins. Co., 896 So. 2d 230, 233 (La. App. 4 Cir. 2005)).

[14] La. Bag. Co., Inc. v. Audubon Indem. Co., 999 So.2d 1104, 1119 (La. 2008) (internal quotations omitted).

[15] Richardson v. GEICO Indem. Co., 48 So. 3d 307, 314 (La. App. 1 Cir. 2010).

[16] Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 787 F.3d 276, 286 (5th Cir. 2015).

received satisfactory proof of loss sufficient to trigger the payment periods is a question of fact."[17] "The phrase 'arbitrary and capricious' means 'vexatious' or 'unjustified, without reasonable or probable cause or excuse.'"[18] "An insurer does not act arbitrarily and capriciously . . . when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage."[19]

Allied argues that Junca cannot succeed on his claim for bad faith because it did not receive satisfactory proof of loss until Junca sent his estimate and demand on March 14, 2022. Thereafter, Allied timely invoked the appraisal process and tendered payment of the appraisal award to Junca within 30 days of the award's issuance. Allied is correct that compliance "with a contracted and self-invoked appraisal process fails to provide evidence or factual proof of vexatious, arbitrary, [or] capricious [conduct] or conduct without probable cause."[20]

---

[17] Lamar Advert. Co. v. Zurich Am. Ins. Co., No. CV 18-1060-JWD-RLB, 2021 WL 1113451, at *9 (M.D. La. Mar. 22, 2021).

[18] *Id.* at *12 (quoting Dickerson v. Lexington Ins. Co., 556 F.3d 290, 297 (5th Cir. 2009)).

[19] *Dickerson*, 555 F.3d at 297–98 (citing Calogero v. Safeway Ins. Co. of La., 753 So. 2d 170, 173 (La. 2000)).

[20] Long v. Am. Sec. Ins. Co., 52 So. 3d 260, 264 (La. App. 4 Cir. 2010); *see, e.g.*, *Island Concepts*, 2014 WL 5524379 at *14 ("Like in *Long*, [the insurer's] compliance with the contractual appraisal process does not provide evidence of bad faith. Because [the insured] has pointed to no evidence indicative of its ability to prove at trial that [the insurer] acted with bad faith, [the insurer] is entitled to summary judgment with regard to [the insured's] bad faith claims."); *Consol. Premium Properties*, 2011 WL 6300334, at *3 ("[B]ecause [the insurer] paid plaintiffs the amount due under the appraisal award well within the statutory period . . . [the insurer] made timely payment of the claim, and it is therefore entitled to summary judgment.").

In its Motion, Allied relies on this Court's opinion in *Wells v. Southern Fidelity Insurance Company*.[21] In *Wells*, the insurer hired an engineer to provide an estimate of the tornado damage to the plaintiff's home.[22] The adjuster's report estimated the cost of repair to the plaintiff's home at $31,960.28, and the insurer tendered that amount to the plaintiff.[23] The plaintiff then hired a contractor who estimated that it would cost more than $270,000.00 to repair her home.[24] Thereafter, the parties engaged in the appraisal process, and the insurer paid the plaintiff an additional $13,406.12 as a result of that process.[25] This Court granted summary judgment to the insurer on the plaintiff's bad faith claims, holding that the insurer timely reimbursed the plaintiff the undisputed costs of repair at every stage of the claims process and that its failure to pay the amount of the appraisal award before the award was given was not evidence of bad faith.[26] The Court pointed out that the plaintiff had not provided any other evidence suggesting that the insurer acted in bad faith.[27]

Unlike *Wells*, however, Junca has provided other evidence of bad faith here. In fact, he alleges that Allied engaged in bad faith behavior even before invoking the appraisal process. Junca argues that Allied had satisfactory proof of loss when it sent an adjuster to inspect his property on September 12, 2021. Junca is correct that, "under Louisiana law an insurer can, at least in some cases, obtain satisfactory proof of loss as a result of its adjuster's inspection of

---

[21] Wells v. S. Fid. Ins. Co., No. CV 18-1696, 2019 WL 118015 (E.D. La. Jan. 7, 2019).
[22] *Id.* at *3.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*

the damaged property."[28] He argues that despite having unfettered access during the inspection, the adjuster grossly misrepresented the nature and scope of the damage to the property and completely omitted several items of damage, including some that Junca pointed out to the adjuster. Junca contends that the adjuster did not get on the roof during the inspection, but FEMA later inspected the roof and found damage sufficient to warrant covering it with a tarp. Based on the deficient inspection of its adjuster, Allied estimated the damage at 20 times less than it ultimately agreed to pay Junca in the appraisal process. Junca also contends that, prior to obtaining counsel, he was not able to contact anyone from Allied to discuss its damage estimate. Junca argues that these facts create a material issue of fact regarding whether he is entitled to bad faith damages.

This Court agrees with Junca and finds the court's opinion in *Lee v. State Farm Fire & Casualty Co.* instructive.[29] In *Lee*, State Farm performed an exterior-only inspection of hurricane damage to the plaintiff's property and estimated the damage to the roof at $10,488.88 replacement cost value, an amount that, after depreciation, was less than the policy's deductible.[30] A public adjuster later estimated the damage to the plaintiff's home at $113,225.62.[31] Thereafter, State Farm performed a joint inspection with the public adjuster of the interior and exterior of the home and revised its estimate to $116,701.31.[32] The new estimate included a replacement cost value of the

---

[28] Korbel v. Lexington Ins. Co., 308 F. App'x 800, 804 (5th Cir. 2009).
[29] No. 2:21-CV-01830, 2022 WL 14054181, at *1 (W.D. La. Oct. 24, 2022).
[30] *Id.*
[31] *Id.*
[32] *Id.*

Case 2:22-cv-02085-JTM-JVM   Document 29   Filed 04/27/23   Page 9 of 10

roof at $29,647.19.[33] State Farm tendered payment to the plaintiff within 14 days of the second inspection but seven months after the initial inspection. The plaintiff claimed that State Farm acted in bad faith in underestimating his claim after the initial inspection.[34] The court found that summary judgment in Defendant's favor was precluded by material issues of fact regarding whether State Farm had satisfactory proof of loss after the initial inspection and whether it acted arbitrarily and capriciously in its initial estimate of the damage.[35] The court found the initial underestimate of the damage to the roof by $19,158.31 to be evidence of bad faith.[36]

Here, Junca presents evidence that, despite having full access to inspect his home, Allied's adjustor ignored portions of the damage and presented an estimate that was 20 times less than what Allied ultimately agreed to pay in the appraisal process. Allied then failed to communicate with Junca until he retained counsel and prepared an estimate at his own expense. Accordingly, Junca has carried his burden to show material issues of fact regarding whether Allied had satisfactory proof of loss after its initial inspection and whether it acted arbitrarily in initially estimating the damage at $2,453.89.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART**. Defendant Junca's counterclaim for breach of contract is **DISMISSED WITH PREJUDICE**.

---

[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*

9

New Orleans, Louisiana this 27th day of April, 2023.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**